UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAMALA THOMAS                                                      CIVIL ACTION

VERSUS                                                             NO. 21-2241

TRANSUNION, LLC, *et al.*                                          SECTION M (4)

### ORDER & REASONS

Before the Court is a motion to dismiss filed by defendant Trans Union LLC ("Trans Union").[1] Plaintiff Pamala Thomas ("Thomas") responds in opposition,[2] and Trans Union replies and submits supplemental authority in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting Trans Union's motion to dismiss because the credit report at issue is neither inaccurate nor misleading.

**I.   BACKGROUND**

This case concerns alleged inaccuracies in a consumer credit report. Thomas filed this suit against defendants Trans Union, Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Self Financial, Inc., d/b/a Lead Bank ("Self Financial"), and Credit One Bank, N.A. ("Credit One"),[4] alleging that defendants Trans Union, Equifax, and Experian (collectively, the "Bureaus") prepared and issued inaccurate and misleading credit reports relating to her Self Financial account in violation of the Fair Credit Reporting Act, 15

---

[1] R. Doc. 24.  The complaint identifies the defendant as Transunion, LLC, R. Doc. 1, which, presumably, is mistaken given the defendant's consistent reference to itself as Trans Union LLC.  R. Docs. 24; 30.  The Court will use the convention Trans Union, not Transunion, to refer to the defendant, but they are one and the same.
[2] R. Doc. 25.
[3] R. Docs. 30; 32.
[4] Credit One was later voluntarily dismissed as a defendant.  R. Doc. 27.

1

U.S.C. §§ 1681-1681x.[5] Thomas alleges that she paid in full and closed her Self Financial account in December 2019, but the credit reports issued by the Bureaus still indicate that her Self Financial account is 60 days past due.[6] According to Thomas, on or about June 24, 2020, she notified the Bureaus that she disputed the accuracy of the information they were reporting and that the Bureaus, in turn, notified Self Financial of Thomas's disputes.[7]

With respect to Trans Union, Thomas alleges that it willfully and negligently violated the FCRA, specifically §§ 1681e(b) and 1681i(a), in reporting her Self Financial account as being 60 days past due.[8] She alleges that Trans Union failed to follow reasonable procedures to ensure the maximum possible accuracy of the information reported, failed to properly investigate the inaccuracy after she reported it, and otherwise failed to take corrective action to remove or annotate the inaccurate information.[9]

## II.   PENDING MOTION

Trans Union argues that Thomas cannot satisfy the initial burden for pleading viable claims under §§ 1681e(b) and 1681i because she has not pointed to any inaccuracy in her credit report.[10] Next, Trans Union argues that, when viewing, in its entirety, the information it reported about Thomas's Self Financial account, the credit report is not inaccurate or misleading because the "pay status" section reflects historical information regarding a past delinquency, not the current status of the account.[11] Trans Union then argues that Thomas's algorithm theory is without merit because the ways in which third-party companies use algorithms to read information contained in the

---

[5] R. Doc. 1 at 1, 4.
[6] *Id.* at 4.  Trans Union's credit report shows that the account was closed on December 24, 2019.  R. Doc. 24-3 at 9.
[7] R. Doc. 1 at 5.
[8] *Id.* at 9-12.
[9] *Id.*  Thomas likewise brings claims of willful and negligent violation of the FCRA against the other defendants, Equifax, Experian, and Self Financial.  *See id.* at 12-22.
[10] R. Doc. 24-1 at 4-5.
[11] *See id.* at 5-16

reports to create credit scores have no bearing on the accuracy or inaccuracy of the reports themselves.[12] Trans Union contends that Thomas's subjective belief that the pay status field refers to the current status of the account is insufficient to support a claim of inaccuracy.[13] Lastly, Trans Union argues that Thomas's willfulness claim should be dismissed because the report was not inaccurate.[14] In the alternative, Trans Union argues that Thomas has not pleaded the required elements of a willfulness claim because Thomas has not identified a single practice or policy of Trans Union that is objectively unreasonable.[15]

In opposition, Thomas argues that the "pay status" recorded in the report refers to the account's current status and is not historical information.[16] She also argues that, although the account balance is reported as "$0," the credit report is misleading because the account status is a "separate, discrete line item in the credit report that carries with it an independent duty to communicate concrete information about the nature of the account …."[17] She contends that the report is "technically inaccurate and materially misleading" because it is impossible for an account to be 60 days past due in the same month that it was fully satisfied.[18] Thomas then argues that Trans Union's report of the account's delinquency is inaccurate because credit-scoring algorithms interpret the "pay status" section of the report as a current delinquency, which negatively affects her credit score.[19] As to Thomas's willfulness claim, she argues that reporting a 60-day delinquency on a closed and fully satisfied account is an obvious inconsistency which should be viewed as a willful violation of the FCRA.[20] She contends that, at this early stage of the litigation,

---

[12] *Id.* at 16-17.
[13] *Id.* at 19.
[14] *Id.* at 19-20.
[15] *Id.* at 20-21.
[16] R. Doc. 25 at 10-11.
[17] *Id.* at 13.
[18] *Id.* at 14.
[19] *Id.* at 15.
[20] *Id.* at 20-21.

the Court should draw the reasonable inference that Trans Union's conduct in continuing to publish the inaccurate information was willful.[21] Finally, Thomas argues that, without discovery, she is unable to identify a policy, practice, or procedure of Trans Union that might justify a finding of willfulness, but with the benefit of discovery, she might be able to do so.[22]

In reply, Trans Union attempts to distinguish the cases upon which Thomas relies and reiterates that reporting Thomas's Self Financial account to have been 60 days past due in the month before it was closed, along with the closed status of the account and its having a "$0" balance, is not inaccurate or misleading.[23] Trans Union also re-urges that Thomas's algorithm theory is inconsistent with persuasive jurisprudence, and that Thomas has not pleaded a willful violation of the FCRA.[24]

### III.   LAW & ANALYSIS

#### A. Motion to Dismiss Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements

---

[21] *Id.* at 20.
[22] *Id.* at 21.
[23] R. Doc. 30 at 1-5.
[24] *Id.* at 6-8.

of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's

5

likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[25] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Analysis

The FCRA requires "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit … in a manner which is fair and equitable to

---

[25] Trans Union attaches Thomas's credit report to its motion to dismiss. *See* R. Doc. 24-3. The report is referenced in the complaint and central to Thomas's claim. Thomas neither objects to consideration of the credit report nor challenges its authenticity. Thus, the Court will consider it in ruling on Trans Union's motion.

the consumer." 15 U.S.C. § 1681(b). By establishing "a complex set of rights and obligations that attend the relationships among and between the provider of a credit report, the user of that information and the consumer who is made the subject of such a report," *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998), the FCRA is designed "to protect an individual from inaccurate or arbitrary information about [her]self in a consumer report that is being used as a factor in determining the individual's eligibility for credit, insurance, or employment." *Pinner v. Schmidt*, 805 F.2d 1258, 1261 (5th Cir. 1986). The FCRA provides remedies to an aggrieved consumer for a credit reporting agency's negligent or willful failure to comply with the requirements of the Act. *See* 15 U.S.C. §§ 1681n, 1681o.

Thomas brings claims against Trans Union for failure to comply with §§ 1681e(b) and 1681i. Section 1681e(b) provides that, when preparing a consumer report, a credit reporting agency must use "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.* § 1681e(b); *see also Pinner*, 805 F.2d at 1262 ("[Section 1681e(b)] imposes a duty of reasonable care in the preparation of a consumer report."). Section 1681i requires consumer credit "reporting agencies to reinvestigate and to delete information found to be inaccurate or no longer verifiable once the consumer has protested the inclusion of the material." *Pinner*, 805 F.2d at 1262. A consumer credit reporting agency that negligently violates either of these sections is liable for the injured consumer's actual damages resulting from the violation, along with costs and reasonable attorney's fees. 15 U.S.C. § 1681o. Willful violation of either section exposes the reporting agency to punitive damages as well. *Id.* § 1681n.

While §§ 1651e(b) and 1681i each have several elements, both sections require a plaintiff to establish, at a minimum, that her credit report contains inaccurate information in order to state

7

a claim. *Hurst v. Equifax Info. Servs., LLC*, 2021 WL 5926125, at *4 (W.D. Tex. Dec. 15, 2021) (collecting cases). "A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado*, 158 F.3d at 895 (citing *Pinner*, 805 F.2d at 1258); *see also Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020) (defining "maximum possible accuracy" as "factually true and also unlikely to lead to a misunderstanding"). Courts use an "objectively reasonable" interpretation of the credit report to determine if it is accurate under the FCRA. *Erickson*, 981 F.3d at 1252. Under this standard, "[i]f a report is so misleading that it is objectively likely to cause the intended user to take adverse action against its subject, it is not maximally accurate. On the other hand, the fact that some user somewhere could possibly squint at a report and imagine a reason to think twice about its subject would not render the report objectively misleading." *Id.* In sum, a credit report contains inaccurate information if it is "factually incorrect, objectively likely to mislead its intended user, or both." *Id.* When making this determination, the report must be viewed in its entirety, instead of focusing on a single field of data. *See, e.g., O'Neal v. Equifax Info. Servs., LLC*, 2021 WL 4989943 at *2 (S.D. Fla. Oct. 27, 2021) (collecting cases)

The Trans Union credit report at issue here shows the status of Thomas's Self Financial account from July 2019 (when it was opened) to December 2019 (when it was paid off and closed).[26] It shows an opening balance of $526; the amounts due and actually paid for July through December 2019; that the account became past due in November 2019; and that the account was 60 days past due when it was paid off in December 2019.[27] It notes the "Pay Status" as "Account 60

---

[26] R. Doc. 24-3 at 9.
[27] *Id.*

Days Past Due Date," and that the account had a "Maximum Delinquency of 60 days in 12/2019."[28] But it also notes that the "Terms" are "$0 per month, paid Monthly for 24 months" and the "Date Closed" as "12/24/2019."[29]

Thomas has not established that any of this constitutes inaccurate information. Notably, Thomas does not allege in the complaint that any of this information is factually incorrect. Instead, Thomas argues that "reporting a paid-off debt as 60-days past due" is patently inaccurate and misleading.[30] She contends it was misleading because an account cannot be simultaneously paid off and past due. But the report is not inaccurate or misleading when objectively viewed as a whole. The "pay status" field clearly reflects historical information, not the current status of the account, especially when considered in conjunction with the report's detailing that the account was closed on December 24, 2019, had payment terms of "$0 per month" and a "$0" balance, and a maximum delinquency of 60 days before it was closed with nothing owed. A reasonable creditor objectively reading the credit report in its entirety would not (really, could not) believe that Thomas was 60 days past due on a closed account with a $0 balance. *See Pineda v. TransUnion, LLC*, 2021 WL 5798282, at *2 (M.D. Fla. Dec. 7, 2021) (holding that reporting an historical delinquency on a closed account is not inaccurate or misleading); *O'Neal*, 2021 WL 498994,3 at *2-3 (same); *Lacey v. TransUnion, LLC*, 2021 WL 2917602, at *4-6 (M.D. Fla. July 12, 2021) (same); *Smith v. Transunion, LLC*, 2021 WL 3111583, at *2 (M.D. Fla. July 1, 2021) (same); *Samoura v. Trans Union, LLC*, 2021 WL 915723, at *2-9 (E.D. Pa. Mar. 10, 2021) (same); *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 573-80 (E.D. Pa. 2021) (same); *Gross v. Priv. Nat'l Mort. Acceptance Co.*, 512 F. Supp. 3d 423, 425-27 (E.D.N.Y. 2021) (same); *Hernandez v. Trans Union LLC*, 2020

---

[28] *Id.*
[29] *Id.*
[30] R. Doc. 25 at 4.

WL 8368221, at *2-4 (N.D. Fla. Dec. 10, 2020) (same); *Settles v. Trans Union, LLC*, 2020 WL 6900302, at *3-5 (M.D. Tenn. Nov. 24, 2020) (same). The Court has carefully considered the cases Thomas cites in her opposition but they clearly represent only the minority view and are not persuasive, most often because they focus only on the "pay status" field without reference to the other data reflected in the credit report viewed in its entirety.

Moreover, Thomas's algorithm argument is unavailing. Thomas alleges that computer algorithms look at each tradeline as "discrete piece[s] of information" and therefore interpret the "pay status" section in her credit report as a current delinquency.[31] Virtually all courts addressing this issue have concluded that this is not the relevant question for FCRA purposes. *See, e.g.*, *O'Neal*, 2021 WL 4989943, at *3 ("How third-party companies choose to utilize algorithms to decipher the accurate information reported by Defendant has no bearing on the accuracy of the report itself."); *Pineda*, 2021 WL 5798282, at *3 (adopting the reasoning of *O'Neal*); *Gibbs v. Trans Union LLC*, 2021 WL 5882109, at *2 (E.D. Pa. Dec. 13, 2021) ("The question the Court must answer is whether the credit report is misleading, not whether some third party could read the credit report incorrectly."); *Brown v. Trans Union, LLC*, 2022 WL 344579, at *3 (M.D. Fla. Feb. 4, 2022) (adopting the reasoning of *O'Neal*), *appeal docketed,* No. 22-1075 (3d Cir. Jan. 12, 2022); *Weeks v. Equifax Info. Servs., LLC*, 2022 WL 685665, at *5 (M.D. Fla. Mar. 8, 2022) ("[The plaintiff] tries to overcome this hurdle by alleging that the allegedly inaccurate information is being used to calculate his credit score, and a lower credit score could impact his creditworthiness. But this argument has been rejected by multiple courts."); *Pinhasov v. Equifax Info. Servs., LLC,* 2022 WL 823886, at *3 (S.D. Fla. Mar. 18, 2022) (adopting the reasoning of *O'Neal*).

---

[31] *Id.* at 2-3.

As was observed in *Gibbs v. Trans Union LLC*, "the Court's analysis must focus on the contents of the credit report itself, not the way that a computer interprets it." 2021 WL 5882109, at *1. The *Gibbs* court explained that "there is no way for the Court to control the way people read a credit report, nor is there a way for the Court to know what quirk of computer programming leads a particular algorithm to draw particular conclusions from aspects of computer report." *Id.* at *2. Furthermore, the court stated that even if it accepted the notion that lenders use algorithms that misinterpret accounts and base their decisions in reliance on an algorithm's misinterpretation of Trans Union's reporting data, "that does not make it plausible that the credit report itself is inaccurate; it might only establish that the lender is relying on an illogical algorithm." *Id.*

Applying this reasoning to the present case, the fact that Thomas's credit score may have been adversely affected by a computer algorithm's misinterpretation of Trans Union's reporting of Thomas's Self Financial account data does not mean the report itself is inaccurate. As the court in *Gibbs* stated, "Trans Union is not obligated to provide credit reporting that will not have an adverse effect, it is only obligated to provide reporting that is not inaccurate or misleading." *Id.* at *3.

Under the prevailing jurisprudence, Thomas's credit report was not inaccurate or misleading. Therefore, her claims against Trans Union under §§ 1681e(b) and 1681i of the FCRA must be dismissed.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Trans Union's motion to dismiss (R. Doc. 24) is GRANTED, and Thomas's claims against it are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 29th day of April, 2022.

                                                BARRY W. ASHE
                                                UNITED STATES DISTRICT JUDGE